■ CHARLES E. McKINNEY et al., Appellants, v BELLEVUE HOSPITAL et al., Respondents.—Order of the Supreme Court, New York County (Eve Preminger, J.), entered October 1, 1990, which denied plaintiffs' motion to dismiss certain of defendants' affirmative defenses, granted defendants' cross-motion to dismiss the complaint for failure to state a cause of action and denied plaintiffs' cross-motion for leave to serve an amended complaint in the event defendants' cross-motion to dismiss were granted, unanimously affirmed, without costs.

In connection with his application for the position of microbiologist at Bellevue Hospital, plaintiff underwent a pre-employment physical examination at the hospital which included a chest x-ray. The x-ray was interpreted by defendant Melinda Jane Staiger, M.D. on September 8, 1987. Her report states, "An irregular agrigate *[sic]* density in the left lung apex is

seen." Her clinical impression is stated as: "Differential diagnosis between pyoinflammatory disease such as tuberculosis verses *[sic]* possible lung neoplasm." Plaintiff was hired by Bellevue Hospital without ever being informed of these results.

In June 1988, plaintiff was examined at Booth Memorial Hospital and informed that he had a tumor. Counsel's affidavit in response to defendants' motion to dismiss states, "After the diagnosis was made and related to him by physicians at Booth Memorial Hospital, he did return to Bellevue Hospital to have some additional x-rays which confirmed the diagnosis of a malignant lesion on the left lung infiltrating." A report in the Bellevue Hospital file dated June 21, 1988 makes reference to an x-ray taken at Booth Memorial Hospital on June 6, 1988 but reaches the same differential diagnosis previously made by Dr. Staiger. Later reports, including one dated July 27, 1988, refer to the mass as "lung carcinoma". Plaintiff underwent an upper lobectomy at New York University Hospital on or about August 8, 1988.

Notice of claim pursuant to General Municipal Law § 50-e was not served until October 24, 1988, and no motion was made seeking leave to file a late notice of claim. Supreme Court dismissed the complaint for failure to state a cause of action on the ground that no physician-patient relationship arises as a result of a pre-employment physical examination upon which a claim for medical malpractice may be predicated, citing *LoDico v Caputi* (129 AD2d 361, *lv denied* 71 NY2d 804), *Hale v State of New York* (53 AD2d 1025) and *Chiasera v Employers Mut. Liab. Ins. Co.* (101 Misc 2d 877). Supreme Court further denied plaintiff's motion for leave to amend his complaint to state a cause of action for common-law negligence, reasoning: "A physician-patient relationship is an essential element of a cause of action based upon allegations of improper care or treatment by a medical practitioner, whether such cause of action is labelled 'simple negligence' or 'medical malpractice' ". The court did not reach the issue of whether or not the notice of claim was timely served. We affirm, but for an entirely different reason than that stated by Supreme Court.

While a cause of action sounding in medical malpractice must be predicated upon the existence of an express or implied physician-patient relationship *(Lee v City of New York,* 162 AD2d 34, *lv denied* 78 NY2d 863; *Hickey v Travelers Ins. Co.,* 158 AD2d 112; *Twitchell v MacKay,* 78 AD2d 125), an action based upon simple negligence does not. However, as

noted by the Appellate Division, Fourth Department in *Hale v State of New York* (53 AD2d, *supra*, at 1025), "The theory of simple negligence is restricted to those cases where the alleged negligent act is readily determinable by the trier of the facts on common knowledge (see, e.g., *Dillon v Rockaway Beach Hosp. & Dispensary*, 284 NY 176 [an electric light bulb left under the sheets by an attendant]; *Phillips v Buffalo Gen. Hosp.*, 239 NY 188 [application of scalding hot water bottle to a patient])" *(see also, Morwin v Albany Hosp.*, 7 AD2d 582, *amended* 8 AD2d 911 [rules pertaining to medical malpractice apply to acts requiring professional skill and knowledge]).

As we noted in *Stendig, Inc. v Thom Rock Realty Co.* (163 AD2d 46, 48), "The test on a motion to dismiss for insufficiency of the pleadings is not whether the plaintiff has artfully drafted the complaint but whether, deeming the complaint to allege whatever can be reasonably implied from its statements, a cause of action can be sustained". The complaint, as amplified by plaintiff's verified bill of particulars, alleges negligence by reason of defendants' failure to communicate the *results* of his pre-employment physical examination.

We agree with Supreme Court that, in the absence of a physician-patient relationship, a malpractice action may not be maintained. Defendants were under no duty to detect or treat plaintiff's condition. However, defendants did detect the presence of a potentially life-threatening condition, differentially diagnosed as either tuberculosis or other pyoinflammatory disease or a tumor. The operative question is whether, having correctly detected a disease, defendants were under a duty to disclose the condition to plaintiff.

Our law does not generally impose a duty to make disclosure, requiring some affirmative misrepresentation before imposing liability *(see, Stambovsky v Ackley*, 169 AD2d 254). However, as suggested by a leading commentator, "a failure to disclose the existence of a known danger may be the equivalent of misrepresentation, where it is to be expected that another will rely upon the appearance of safety" (Prosser, Torts § 33, at 179 [4th ed]). "The causal connection between the wrongful conduct and the resulting damage, essential throughout the law of torts, takes in cases of misrepresentation the form of inducement of the plaintiff to act, or to refrain from acting, to his detriment" (Prosser, Torts § 108, at 714 [4th ed].

The failure to inform an employee or prospective employee that his pre-employment physical has detected a serious medical condition is an act of ordinary negligence within the experience of a trier of fact. That, under the circumstances of

this case, the silence of the employer induced reliance by plaintiff on his general good health and resulted in the failure to seek treatment, to his obvious detriment, may be inferred from the pleadings for the purposes of a motion to dismiss the complaint *(Arrington v New York Times Co.,* 55 NY2d 433, 442; *Rovello v Orofino Realty Co.,* 40 NY2d 633, 634). The tendency of the average person, in similar circumstances, to interpret the employer's silence as an indication of good health is so apparent and the consequence of such reliance so potentially serious that we conclude that the law imposes a duty to disclose upon the employer. In comparison with the harm to be abated, the burden placed upon the employer is slight and promotes the public welfare *(cf., Green v Walker,* 910 F2d 291, 296 [5th Cir]).

We are nevertheless constrained to affirm the dismissal of the complaint. The moving affidavits and medical reports contained in the record disclose that the pre-employment x-ray and report of Dr. Staiger dated September 8, 1987 were obtained by plaintiff in June 1988, and plaintiff knew of defendants' failure to inform him of the condition at that time. The period within which to file a notice of claim expired in September 1988 and, thus, plaintiff's service of the notice of claim on October 24, 1988 was untimely. Concur—Milonas, J. P., Wallach, Kassal and Rubin, JJ.